UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASANTE, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES, et al.,<br><br>　　　　　Defendants. | Case No. 14-cv-03226-EMC<br><br>**ORDER DENYING RETROACTIVE RELIEF**<br><br>Docket Nos. 69, 70 |

## I.　INTRODUCTION

On December 21, 2015, this Court issued its order granting Plaintiffs' motion for partial summary judgment on the grounds that the discrimination in payments to out-of-state hospitals violates the dormant Commerce Clause. *Asante v. California Dep't of Health Care Servs.*, No. 14-CV-03226-EMC, 2015 WL 9269666, at *26 (N.D. Cal. Dec. 21, 2015). This order addresses parties' supplemental briefing on the availability of retroactive damages and sovereign immunity.

## II.　BACKGROUND

The parties and the Court are familiar with the factual and procedural background in this case, and the Court will only discuss the background that is relevant to the supplemental briefing.

In its December 21, 2015 Order, the Court found, *inter alia*, that the disparity between the Medicaid reimbursement amounts the California Department of Health Care Services ("The Department") paid to in-state and out-of-state hospitals serving California Medi-Cal beneficiaries violated the dormant Commerce Clause. *Id*.

On July 1, 2013, the Department implemented the All Patient Refined Diagnosis Related Group ("APR-DRG"). *Id*. at *3. The APR-ARG reimbursement scheme excluded out-of-state hospitals from various wage indices, rural, and policy adjustments:

> (1) The Department increased the labor component of the "base price" of each in-state hospital by using the Medicare wage index for the geographical area in which the hospital is located, but made no such adjustment for out-of-state hospitals;
>
> (2) The Department increased the labor component of the "base price" of each in-state hospital by using the California "rural floor" wage index, but made no such adjustment for out-of-state hospitals;
>
> (3) The Department increased the labor component of the "base price" of each in-state hospital by using the Medicare wage index for the area in which the hospital has been reclassified in California, but makes no such adjustment for out-of-state hospitals;
>
> (4) The Department had classified 52 in-state hospitals as "remote rural" and significantly increased their "base price," but made it impossible for out-of-state hospitals to be classified as "remote rural";
>
> (5) The Department had classified 21 in-state hospitals as "NICU-Surgery," and increased by 75% the payments they receive for neonate cases, but made it impossible for out-of-state hospitals to be classified as "NICU-Surgery";
>
> (6) In its outlier calculations the Department used a hospital-specific CCR for each in-state hospital, but for out-of-state hospitals applied a fixed Medicare CCR of 22% that is much lower than the average Medi-Cal CCR of California hospitals.

*Id*. at *21.

The Court held that the Department rules under the APR-ARG reimbursement scheme in effect until 2015 discriminated against out-of-state hospitals in violation of the dormant Commerce Clause.[1] *Id*. On September 29, 2015, the Department obtained the approval of the new State Plan Amendment 15-020 ("15-020 Amendment"). *Id*. at *5. The 15-020 Amendment changed the APR-DRG policies concerning the wage index, remote rural base price, NICU policy adjustment, and CCR with respect to out-of-state border hospitals:

---

[1] "The discrimination here is facial. For example, before the 15-020 Amendment, the Department applied a uniform wage index 1.0 to all out-of-state hospitals. Rowan Decl. ¶ 8. Thus, a California hospital with a wage index of 1.5 was receiving 34% more per Medi-Cal discharge than an out-of-state hospital with the same wage index. Compl. ¶ 16. In addition, a remote rural California hospital was receiving a base price of $10,218, while a similarly situated out-of-state hospital was receiving a base price of $6,223. Moreover, the Department estimates that the 15-020 Amendment will increase Medi-Cal out-of-state expenditures by $1.4 million per year. D's RJN, Ex. C at 1007." *Id*. at *21 n.27.

2

> (1) For California hospitals and border hospitals, the Department will apply the same hospital specific wage area index value that the Medicare program applies to that hospital, further adjusted by the California Wage Area Neutrality Adjustment of .9797. Rowan Decl., Ex. B at 17.49.
>
> (2) If a border hospital is defined as a rural hospital by the federal Medicare program and meets the California State Plan definition of a "remote" hospital and complies with the State Plan non-combined license/provider number standard, it will qualify for the remote rural base price. Rowan Decl. ¶ 24.
>
> (3) A border hospital will qualify for the 1.75 policy adjustor for a neonate hospital stay if the hospital submits an application for neonatal intensive care unit status to California Children's Services. Rowan Decl. ¶ 25.
>
> (4) For border hospitals, the cost-to-charge ratio used to determine outlier payments will be based on a formula using data from the Medicare average cost-to-charge ratios for operating and capital costs for hospitals in the state in which the border hospital is located. Rowan Decl. ¶ 25.

*Id*. at *5.

The effective date of these changes was July 1, 2015. *Id*. Plaintiffs asserted that even after the enactment of the 15-020 Amendment, out-of-state hospitals did not receive: (1) the California "rural" floor wage index; (2) Medicare wage index reclassifications; (3) the "remote rural" definition for out-of-state hospitals remains very restrictive; and (4) a cost-to-charge ratio that is based on Medicaid (35%), rather than Medicare (22%) patients. *Id*. at *24. The Court agreed that "[t]here remains disparity between in-and out-of-state hospitals because out-of-state hospitals are being paid less."[2] *Id*. at *25. Because even a "'slight disparity in the treatment of in-state and out-of-state interests may offend the dormant commerce clause,'" the Court concluded that the Department unconstitutionally discriminates against out-of-state hospitals even after the 15-020

---

[2] "If out-of-state hospitals received the 'rural' floor wage index, their base prices would have increased by 15.7%. Vaida Decl. ¶ 13. Moreover, the remote rural base price is higher than a regular base price by 64%. ($10, 218 v. $6,223). *Id*.; Compl. ¶ 18. In addition, California hospitals receive Medicare wage index reclassifications that increase their wage index values. Vaida Decl. ¶ 13. Finally, the cost-to-charge ratio for out-of-state hospitals is 22%, whereas for California hospitals the cost-to-charge ratio is 35%. P's MSJ at 14. A hospital's estimated cost on a discharge claim is determined by multiplying the Medi-Cal covered charges by a cost-to-charge ratio. Vaida Decl. ¶ 22. If there is a loss, then the hospital may qualify for a substantial additional payment. The higher the cost-to-charge ratio, the more likely it is that there will be a loss and thus an additional outlier payment." *Id*. at *25.

1  Amendment. *Id*. at *26. (quoting *Children's Hosp. & Med. Ctr. v. Bontá*, 97 Cal. App. 4th 740,
2  766 (2002)).

### III. DISCUSSION

At the outset, the Court notes that Plaintiffs expressly waived federal claims, stating that the state complaint contains only state law causes of action and seeks only remedies provided for under California law. Docket No. 70 at 1 ("P's SB"). Plaintiffs expressly now disavow any direct federal causes of action, seeking relief solely under writ of mandate pursuant to California Code of Civil Procedure § 1085. P's SB at 1 (stating that "[t]he Hospitals' State Court Complaint contains no federal causes of action and seeks no remedies under federal law."). Moreover, the Department only challenges retrospective relief effective prior to the date of this Court's summary judgment order (December 21, 2015) and does not assert a sovereign immunity defense as to prospective relief; in fact, the Department does not assert any other procedural obstacle to prospective relief if a commerce clause violation is found.

A.  Retrospective Relief

  1.  Legal Standard

California courts have articulated two basic requirements that are essential to the issuance of a writ of mandate under the Code of Civil Procedure section 1085: "(1) A clear, present and usually ministerial duty upon the part of the respondent; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty. *Shamsian v. Department of Conservation*, 136 Cal. App. 4th 621, 640 (2006). 'However, the writ will not lie to control discretion conferred upon a public officer or agency. [Citations].'" *Hulings v. State Dept. of Health Care Services*, 159 Cal. App. 4th 1114, 1120 (2008). Mandamus is the proper remedy only where the act or duty is purely ministerial, and the act or duty is one that is clearly and plainly established or imposed by law. A ministerial duty is one that is required to be performed in a prescribed manner under the mandate of legal authority without the exercise of discretion or judgment. *Cty. of San Diego v. State*, 164 Cal. App. 4th 580, 593 (2008). Issuance of a writ of mandate "'is not necessarily a matter of right, but lies rather in the discretion of the court, but where one has a substantial right to protect or enforce, and this may be accomplished by such a writ, and there is no other plain,

4

speedy and adequate remedy in the ordinary course of law, [the petitioner] is entitled as a matter of right to the writ, or perhaps more correctly, in other words, it would be an abuse of discretion to refuse it."' *Powers v. City of Richmond*, 10 Cal. 4th 85, 114 (1995).

The Department contends that "[w]hile the dormant Commerce Clause establishes a general obligation of non-discrimination to out-of-state interests, it does not establish any 'clear, present, and ministerial' duties with respect to the specific acts that Defendants are required to take in applying its principles to the highly complex details of Medi-Cal reimbursement to out-of-state hospitals." D's SB at 14. The Court agrees.

The kinds of conduct violative of "ministerial" duties under § 1085 have been described variously: *e.g.*, where "the Department failed to perform an act despite having *a clear and present ministerial duty* to do so," *Riverside Sheriff's Assn. v. County of Riverside*, 106 Cal. App. 4th 1285, 1289 (2003) (emphasis added); "[w]here a statute requires an officer to do a *prescribed act upon a prescribed contingency, his functions are ministerial . . . .*" *Rodriguez v. Solis*, 1 Cal. App. 4th 495, 504-05 (1991) (emphasis added); "to compel state officers to disburse *funds specifically appropriated . . . .*" *Los Angeles Cty. v. State Dep't of Pub. Health*, 158 Cal. App. 2d at 430 (emphasis added).

Typically, these cases invoke a situation where a public entity refuses to release funds in accordance with a clear and simple statutory duty. For instance, in *Cty. of Sacramento v. Lackner*, 97 Cal. App. 3d 576, 586-87 (Cal. Ct. App. 1979), the county sued the Department seeking to force the release of reimbursement monies allegedly withheld in violation of clear statutory duty. In that case, the Department declared a fiscal emergency and imposed a 10 percent cutback in payments to health care providers. *Id*. at 581. The Court of Appeal stated: "plaintiffs sought to compel the state to disburse funds in the manner provided by the Medi-Cal statutes. While the action has the practical effect of awarding plaintiffs money (which has routinely been referred to as "damages" by all parties), in law it is simply an action in mandamus to compel by *ministerial* act the release of funds, not one for damages from the sovereign." *Id*. at 588 (emphasis added). *Accord County of L.A. v. State Dept. Pub. Health*, 158 Cal. App. 2d 425, 430-32 (1958) (mandamus appropriate to force state agency to release identified tuberculosis subsidies; there was

a statutory duty to pay a subsidy to any city or county maintaining a tuberculosis ward or hospital of $1.75 to $2.60 per patient day "for each person in the active stages of tuberculosis cared for therein at public expense who is unable to pay for his support." ); *County of Los Angeles v. Riley*, 20 Cal.2d 652, 653-54, 656 (1942) (mandamus to force the state to recalculate credit for aid payments prescribed by Welfare and Institutions Code); *California Hosp. Ass'n v Maxwell-Jolly*, 188 Cal. App. 4th 559, 566, 578, *as modified on denial of reh'g* (Sept. 16, 2010) (mandamus to reverse the Department's attempt to apply a 20 percent exclusion in calculating reimbursement rates rather than factors set forth in 42 U.S.C. § 1396a(a)(30)(A)); *California Assn. for Health Servs. at Home v. State Dep't of Health Care Servs.*, 204 Cal. App. 4th 676, 679, 683-84 (2012) (mandamus to force the Department to comply with federal Medicaid and Medi-Cal laws to review reimbursement rates paid to providers of home health care services as required by 42 U.S.C. § 1396a(a)(30)(A); *Mission Hosp. Reg'l Med. Ctr. v. Shewry*, 168 Cal. App. 4th 460, 473-74, 476 (2008) (mandamus to enjoin the Department from adopting a freeze on the reimbursement rates paid to noncontract hospitals for inpatient services without complying with public notice and comment period as required by 42 U.S.C. § 1396a(a)(13)(A)(i)-(iii)); *Indep. Living Ctr. of S. California, Inc. v. Maxwell-Jolly*, 572 F.3d 644, 648 (9th Cir. 2009) *vacated and remanded sub nom. Douglas v. Indep. Living Ctr. of S. California, Inc.*, 132 S.Ct. 1204 (2012) (mandamus to enjoin the Department from reducing payments to certain medical service providers by ten percent).

At oral argument, Plaintiffs argued that the finding of clear and ministerial duty in the case at bar exists because damages owed are calculable. The argument is not persuasive. First, calculation of damages is not as simple as, *e.g.*, restoring a 10% across-the-board cut or releasing a pre-identified fund. Instead, as the briefing on the motions for summary judgment and prospective relief demonstrates, as to precisely what level of payments is needed to satisfy the dormant Commerce Clause was subject to extensive debate. For example, there was a substantial disagreement concerning the use of (1) a weighted or an unweighted average and (2) the "mean" or the "median" ratios in calculating the proper cost-to-charge ratios for out-of-state hospitals Below is the illustration of some of the highly technical and contested disputes between the

6

parties:

(1) Border hospitals will be assigned a CCR that is equal to the sum of (a) the unweighted average of the Medicare reported average urban CCR and the Medicare reported average rural CCR of operating costs for hospitals in the state in which the border hospital is located, and (b) the Medicare reported average CCR of capital costs for hospitals in the state in which the border hospital is located. State Plan Amendment (SPA) 15-020, approved by CMS on September 29, 2015, Attachment 4.19-A at 17.50. In their calculations of the unaudited CCRs for 416 California hospitals for state fiscal year 2015/2016 Plaintiffs relied only on the "unweighted average." The Department argued, however, that the "unweighted average" is not a reliable statistic because it treats "the CCRs of all the hospitals the same, regardless of the Medi-Cal days rendered by each hospital. For example in an unweighted average calculation, the CCR of a hospital that provided only 50 Medi-Cal days would be treated the same as the CCR of a hospital that provided 10,000 Medi-Cal days. An unweighted average is also inflated by extremely high and potentially flawed unaudited CCRs. A weighted average would weigh each hospital's CCR based on the number of Medi-Cal days or stays provided." Docket No. 72; Defendants' Exh. 2, fn. 3; *see also* Defendants' Exh. 3 ("Examples of the Difference Between Unweighted and Weighted Average").

(2) In addition to its APR-DRG payments, the Department also makes "outlier payments." According to the Department, "outlier payments are appropriate because it is not always possible for the DRG grouper to capture the idiosyncrasies of individual stays." Johnson Decl., Ex. 3. Outlier payments are determined by calculating a hospital's estimated cost and comparing it to the APR-DRG payment to see if there is a loss or gain for the hospital for that claim. Vaida Decl. ¶ 22. The DRG Hospital's estimated cost on a discharge claim is determined by multiplying the Medi-Cal covered charges by the DRG Hospital's most currently accepted cost-to-charge ratio (CCR) from a hospital's CMS 2552-10 cost report. State Plan Amendment (SPA) 15-020, approved by CMS on September 29, 2015, Attachment 4.19-A at 17.49; Rowan Suppl. Decl. Ex. A. The CCR is calculated from a hospital's Medicaid costs divided by the Medicaid charges. *Id*. The parties debated whether to use the "mean" or the "median"[3] in the outlier calculations: "The Department has suggested that for out-of-state hospitals the median rather than the mean of California hospital cost-to-charge ratios ("CCRs") should be used in its outlier calculations. The median is not the appropriate statistic in this case. This is because the median conveys less information than the mean. The median only uses the rank ordering of data values, and not the individual data values themselves." Docket No. 72 ("Joint Report Regarding Outcome of Meet and Confer") at 10 (citing Vaida Decl.). According to Plaintiffs, "[i]n the context of using CCRs for

---

[3] Defendants have recently determined that the "median" unaudited cost-to-charge ratio for California hospitals for 2015/2016 data is 25.89%. Docket No. 72 at 8.

1
2
3
4
5
6
7
8
9
10

outlier payments the mean reflects the aggregate payments made to California hospitals, while the median does not.  Thus, to create parity in outlier payments between in-state and out-of-state hospitals the mean is the statistic that should be used.  The use of the median would not create parity between in-state and out-of-state hospitals.[4]"  Docket No. 72 ("Joint Report Regarding Outcome of Meet and Confer") at 10 (citing Vaida Decl.).

(3)     Plaintiffs' proposal that Defendants be required to apply the California "rural floor wage index" adjusted by .9797 to border hospitals, would be inconsistent with the benchmark Medicare wage index that CMS approved for Medi-Cal in the state plan.  It would also be inconsistent with what Congress expressly authorized for the Medicare program – that the California rural floor wage index only applies to California hospitals, and that different wage indexes apply to hospitals in other states.  Thus, by adopting this Medicare wage index policy for the Medi-Cal DRG reimbursement methodology, the same wage index policy is applied to both California and border hospitals.  *Id*. at 14.

11        Second, the issue is not simply the ultimate calculability of damages, but also the clarity of

12  the duty breached.  The dormant Commerce Clause imposes a broad and somewhat amorphous

13  duty not to "discriminate against interstate commerce."  *New Energy Co. of Ind. v. Limbach*, 486

14  U.S. 269, 273 (1988).  *See* L. Tribe, American Constitutional Law 439 (2d ed. 1988) ("The

15  Supreme Court's approach to commerce clause issues . . . often appears to turn more on ad hoc

16  reactions to particular cases than on any consistent application of coherent principles.").  Unlike in

17  writ of mandate cases listed above, the court must undertake a close and somewhat complex

18  analysis that involves judgment rather than a simple ministerial determination.  For instance, in

19  addition to finding that "a state statute directly regulates or discriminates against interstate

20  commerce, or [whether] its effect is to favor in-state economic interests over out-of-state

21  interests," *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986), a

22  determination that can be complicated where there are dissimilar circumstances between in and

23  out-of-state entities, the court must determine if the challenged law advances a legitimate local

24  purpose that cannot be adequately served by reasonable nondiscriminatory alternatives.  *Dep't of*

25  *Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008).  The court must also determine whether there

---

[4] This is because "the median is used only if the dataset is small in which one very large or very small outlier value may unduly skew the mean.  In such a situation it may be preferable to use the median even if it conveys less information.  However, that is not the case [where] there are 416 different data points in the set of California hospital CCRs."  Docket No. 72 at 10.

8

is Congressional authorization of the challenged scheme which would obviate any Commerce Clause problem. *See White v. Massachusetts Council of Const. Emp'rs, Inc.*, 460 U.S. 204, 213 (1983); *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 155 (1982). In fact, this Court engaged in extensive analysis of this issue before finding a Commerce Clause violation. *See Asante*, 2015 WL 9269666, at *14-19.

While a writ of mandate under CCP § 1085 may also issue where the public entity fails to compel the exercise of discretion, *Common Cause v. Bd. of Supervisors*, 49 Cal. 3d 432, 442 (1989), here the Department did exercise its discretion in establishing a detailed reimbursement scheme for out-of-state border hospitals. What Plaintiffs take issue with is the way in which the Department exercised that discretion. But as noted above, a writ of mandate under § 1085 does "not lie to control the discretion conferred upon a public officer or agency." *Hulings*, 159 Cal. App. 4th at 1120. It lies only where that exercise violates a clear ministerial duty. To construe § 1085 to reach any constitutional violation no matter how complex as an abuse of discretion would swallow the express limitations of the statute.

Plaintiffs rely on *Children's Hosp. & Med. Ctr. v. Bontá*, 97 Cal. App. 4th 740 (2002). Plaintiffs contend that "[i]n *Children's Hospital*, a case which presented identical Commerce Clause claims to the ones here and is directly on point, the Court awarded petitioners $6,088,263 in retroactive Medi-Cal reimbursement." P's SB at 11. In that case, 11 out-of-state hospitals from Nevada, Oregon, and Arizona sued the Department claiming that the difference between the reimbursement of in-state and out-of-state hospitals for treatment of Medi-Cal beneficiaries violated the Commerce Clause. *Bontá*, 97 Cal. App. 4th at 747, 752. The court found that defendants had undercompensated plaintiffs, in violation of state and federal constitutional standards. *Id*. at 758-772. However, plaintiffs' right to reimbursement in *Bontá* was not based on writ of mandate under CCP § 1085. Instead, *Bontá* involved a direct cause of action under the federal Medicaid Act pertaining to the compensation of out-of-state hospitals.[5] *Id*. at 747-48.

---

[5] In *Bontá*, the Court of Appeal stated: "The Eleventh Amendment only restricts the United States-that is, Congress-from subjecting unconsenting states to lawsuits by citizens of the same or another state. The Medicaid Act was not designed for and does not achieve that proscribed purpose; and the fact that violations of the Medicaid Act may result in or exacerbate violations of

9

1  *Bontá* did not address the sole remedial basis asserted here – writ of mandate under CCP § 1085.

2  Because there is no clear, ministerial duty in this case, Plaintiffs cannot rely on writ of
3  mandate under § 1085 to recover retroactive damages.

4  B.     Sovereign Immunity

5  The parties debate whether section 1085 waives sovereign immunity or should be
6  interpreted as providing a relief which coexists with it. There is no need to answer this question
7  because section 1085 does not apply to this action. In addition to section 1085, Plaintiffs are
8  relying on California Code of Civil Procedure § 1095 as an explicit waiver of sovereign immunity.
9  Section 1095 states: "If judgment be given for the applicant, the applicant may recover the
10 damages which the applicant has sustained, as found by the jury, or as may be determined by the
11 court or referee, upon a reference to be ordered, together with costs; and a peremptory mandate
12 must also be awarded without delay." Cal. Civ. Proc. Code § 1095. Because section 1095
13 "merely authorizes damages in a mandamus proceeding where such damages are otherwise
14 appropriate," section 1095 does not apply here without a valid writ of mandate claim as a
15 predicate.[6] *State of California v. Superior Court*, 12 Cal. 3d 237, 246 (1974).

---

constitutional requirements does not in and of itself implicate the doctrine of sovereign immunity. Because the rights asserted by respondents in this action derive from the Constitutions of this state and nation, not from any private right of action created by Congress, *Alden* does not subject them to the bar of the Eleventh Amendment." *Bontá*, 97 Cal. App. 4th at 757-58.

[6] Plaintiffs relied on *Santa Rosa Memorial Hospital, et al. v. David Maxwell-Jolly, et al.*, (No CPF-09-509658, S.F. Super. Ct., Jan. 19, 2016) to argue that section 1095 is a waiver of sovereign immunity as to some form of monetary relief. In that case, Judge Kahn stated:

> CCP provides for "damages" against "a public entity" and the phrase "public entity" is defined to include "the state . . . or other public agency or public corporation." Though I could not find a case so holding, the use of the word "damages" without any limitation in the context of a statute that explicitly applies to the State of California and all its agencies and officials demonstrates that CCP 1095 is a waiver of sovereign immunity as to some form of monetary relief that is awarded on a mandamus claim.

*Santa Rosa Memorial Hospital,* No CPF-09-509658 at *5. The Court is not convinced that § 1095 alone waives sovereign immunity, at least when a claim for writ of mandate does not lie under § 1085. Notably, in *State of California v. Superior Court*, 12 Cal.3d 237, 115 (1974), the California Supreme Court held that imposing liability on the authority of section 1095 alone "would be tantamount to a repeal of sections [that immunize a public entity and public employee from liability for failure to issue a permit] since a cause of action for damages would be appropriate

10

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion for retroactive relief.

This order disposes of Docket Nos. 69 and 70.

**IT IS SO ORDERED**.

Dated: April 12, 2016

_____
EDWARD M. CHEN
United States District Judge

---

each time a permit was denied if the demand for damages was combined with a petition for writ of mandate to compel the issuance of the permit."

11