UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASANTE, et al.,<br><br>  Plaintiffs,<br><br> v.<br><br>CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES, et al.,<br><br>  Defendants. | Case No. 14-cv-03226-EMC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES; AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR REVIEW OF TAXATION OF COSTS**<br><br>Docket No. 127, 143 |

## I.  INTRODUCTION

Plaintiffs, nineteen hospitals from Oregon, Nevada, and Arizona, brought this action challenging California's Medi-Cal reimbursement policies for out-of-state hospitals. The Court awarded partial summary judgment to Plaintiffs, holding that disparities between payments to out-of-state and in-state hospitals violated the dormant commerce clause. Docket No. 65 at 44. Now pending before the Court are Plaintiffs' Motion for Attorneys' Fees and Costs, Docket No. 127, and Defendants' Motion for Review of Taxation of Costs, Docket No. 143. The Court **GRANTS** Plaintiffs' motion and **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

## II.  DISCUSSION

A.  Plaintiffs Entitlement to a Fee Award

Plaintiffs move for attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54. Section 1988 provides that a court may, "in its discretion," award a "reasonable attorney's fee" to a "prevailing party" in a suit brought under various federal statutes, including 42 U.S.C. § 1983. "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)

(quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278-79 (1st Cir. 1978)). Plaintiffs argue that "[t]here is no dispute that [they] have prevailed on significant issues in the litigation," given this Court's "Final Judgment granting plaintiffs' request for injunctive and declaratory relief under the Commerce Clause and 42 U.S.C. § 1983." Docket No. 127 at 1.

Defendants do not dispute that Plaintiffs' are prevailing parties in this sense, but they nonetheless argue that Plaintiffs in this case should not be able to recover fees, as a fee award in this case would be inconsistent with the purposes Congress had in mind in enacting § 1988, and, as the Ninth Circuit has held on more than one occasion, in determining whether to award fees under § 1988, "a court's discretion should be guided by factors related to the Act's purpose." *Aho v. Clark*, 608 F.2d 365, 367 (9th Cir. 1979).

As Courts have often noted, "[t]he purpose of § 1988 is to ensure 'effective access to the judicial process' for persons with civil rights grievances," *Hensley*, 461 U.S. at 429 (quoting H.R.Rep. No. 94–1558, p. 1 (1976)), and thus to "deter civil rights violations and encourage access to the courts to redress often economically unviable injuries to fundamental rights." *Bravo v. City of Santa Maria*, 810 F.3d 659, 668 (9th Cir. 2016). The typical "prevailing party" under § 1988, therefore, is a civil rights plaintiff who, without the ability to attract counsel with the possibility of a fee award, might otherwise be impeded in seeking to redress violations of his or her rights.

By contrast, the Plaintiffs in this case, as in many dormant Commerce Clause cases, are large corporations involved in interstate commerce with revenues (as Defendants argue) "near or above hundreds of millions, if not billions of dollars each year." Docket No. 138 ("Opp.") at 10; *see also Geowaste of Georgia, Inc. v. Tanner*, 875 F. Supp. 830, 834 (M.D. Ga. 1995) ("[W]hatever may be the ratio of poor to prosperous plaintiffs in the context of 'traditional' civil rights cases, that number is certainly inversely proportional to its companion figure for cases brought under the Commerce Clause."). Moreover, in 1976, when Congress enacted § 1988, the dormant Commerce Clause was not understood to confer individual rights enforceable in a suit brought under § 1983. *See Kraft v. Jacka*, 872 F.2d 862, 869 (9th Cir. 1989), *abrogated by Dennis v. Higgins*, 498 U.S. 439 (1991) ("The Commerce Clause places restraints upon the power of the

2

1   states. It divides power between the states and the federal government. We have previously stated
2   that '§ 1983 was not intended to encompass those constitutional provisions which allocate power
3   between the state and federal government.'" (quoting *White Mountain Apache Tribe v. Williams,*
4   810 F.2d 844, 848 (9th Cir.1984))).

5   In 1991, however, the Supreme Court held that the Commerce Clause does, in fact, provide
6   a right enforceable by private parties in a § 1983 action. *Dennis*, 498 U.S. 439. In dissent, Justice
7   Kennedy noted that this decision was troubling in part because it could potentially make fee
8   awards available under § 1988 in Commerce Clause cases. Justice Kennedy noted that a fee
9   award under § 1988 "encourages vindication of federal rights which, Congress recognized, might
10  otherwise go unenforced because of the plaintiffs' lack of resources and the small size of any
11  expected monetary recovery" and pointed to legislative history indicating Congress's intent that
12  such awards "would be 'limited to cases arising under our civil rights laws, a category of cases in
13  which attorneys' fees have been traditionally regarded as appropriate.'" *Dennis*, 498 U.S. at 464
14  (Kennedy, J., dissenting) (quoting S.Rep. No. 94-1011, p. 6 (1976), U.S. Code Cong. & Admin.
15  News 1976, p. 5908). In contrast to such cases, according to Justice Kennedy, the

> significant economic interests at stake in dormant Commerce Clause cases, as well as the resources available to the typical dormant Commerce Clause plaintiff, make such concerns far removed from the realities of dormant Commerce Clause litigation. The pages of the United States Reports testify to the ability of major corporations and industry associations to commence and maintain dormant Commerce Clause litigation without receiving attorney's fee awards under § 1988. By making such fee awards available, the Court does not vindicate the purposes of § 1983 or § 1988, but merely shifts the balance of power away from the States and toward interstate businesses. *Id.*

22  The Court is mindful of the force of these considerations, but concludes that they do not
23  justify the denial of fees. Significantly, the majority in *Dennis* expressly rejected the distinction,
24  between "power-allocating" and "rights-securing" provisions of the Constitution upon which
25  Justice Kennedy's dissent depended. As the Court explained, "the Commerce Clause does more
26  than confer power on the Federal Government; it is also a substantive 'restriction on permissible
27  state regulation' of interstate commerce." *Id.* at 447 (majority opinion) (quoting *Hughes v.*
28  *Oklahoma*, 441 U.S. 322, 326 (1979)). In that sense, the Commerce Clause "confer[s] a 'right' to

3

engage in interstate trade free from restrictive state regulation." *Id.* at 448.  Under the Court's reasoning, therefore, a fee award in a dormant Commerce Clause case *would* "vindicate the purposes of § 1983 and § 1988" by ensuring that an important individual right is adequately enforced.  Thus, nothing in *Dennis* suggests § 1988's fee provision categorically excludes dormant Commerce Clause claims from its application.  Nor has the Ninth Circuit or any other court.  To the contrary, the Ninth Circuit has specifically stated that "[l]itigants who successfully bring suit under the Commerce Clause may recover damages under § 1983 and attorney's fees under § 1988."  *BFI Med. Waste Sys. v. Whatcom Cty.*, 983 F.2d 911, 914 (9th Cir. 1993).

Having determined that § 1988 applies to the case at bar, the Court is mindful that "a prevailing plaintiff [should] only be denied an award of attorney's fees when special circumstances exist sufficient to render an award unjust." *Thomas v. City of Tacoma*, 410 F.3d 644, 648 (9th Cir. 2005).  The 'special circumstances' exception to an award of attorney's fees to a prevailing party under 42 U.S.C. § 1988 'applies only in unusual cases.'" *Vasquez v. Rackauckas*, 734 F.3d 1025, 1055 (9th Cir. 2013) (quoting *Mendez v. Cty. of San Bernardino*, 540 F.3d 1109, 1126–27 (9th Cir. 2008), *overruled on other grounds by Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014) (en banc)). "In applying the 'special circumstances' exception, [courts] focus on two factors: '(1) whether allowing attorney fees would further the purposes of § 1988 and (2) whether the balance of the equities favors or disfavors the denial of fees.'" *Thomas*, 410 F.3d at 648 (quoting *Gilbrook v. City of Westminster,* 177 F.3d 839, 878 (9th Cir.1999)).

Defendants rely on *BFI Med. Waste Sys. v. Whatcom Cty.*, 983 F.2d 911, 914 (9th Cir. 1993), which explained that in evaluating the first factor, a "district court must consider 'factors related to the Act's purpose' . . . includ[ing] 1) the parties' reliance on the unavailability of a fee award; 2) the presence of bad faith by either party; 3) the size of the class benefitted by the litigation; and 4) the need for an attorney's fee in order to attract competent counsel to the suit."[1]

---

[1] Subsequent Ninth Circuit courts do not appear generally to have adopted the *BFI* factors as a way to evaluate whether a fee award would further the purposes of § 1988, but they have not explicitly repudiated them either.  *See, e.g.*, *Vasquez*, 734 F.3d at 1055; *Thomas*, 410 F.3d at 648.  The Court here assumes without deciding that *BFI* remains good law, and concludes that Defendants do not prevail even under its broader rubric for evaluating § 1988 fee awards.

Defendants argue that each of these factors weigh in favor of denying a fee award in this case. The Court disagrees.

With respect to each of the first two factors, Defendants rely on the fact that, at one point in the litigation, Plaintiffs initially waived their federal claims and proceeded only on state law theories; only later did they amend their complaint to clearly assert a § 1983 "only at the last minute and only to avoid an adverse result." Opp. at 8. Thus, Defendants argue that they relied on the unavailability of fees under § 1988 for state law claims, and that Plaintiffs' last-minute assertion of federal claims constituted "bad faith" gamesmanship. But as this Court noted in its order granting Plaintiffs leave to amend, the "proposed amendment re-asserts federal claims that were expressly alleged in the original complaint, and both the parties and the court assumed in the summary judgment proceedings that federal claims were at issue." Docket No. 121 at 3. Moreover, the Court expressly found that Plaintiffs, "[w]hile perhaps sloppy" in their drafting, had not acted in bad faith. *Id.* at 4. Accordingly, the first two factors do not weigh in Defendants' favor. As to the "size of the class benefitted by the litigation," the parties disagree about whether to frame that class as the nineteen plaintiff hospital or the "millions of Medi-Cal beneficiaries in California who my now or in the future need inpatient services at hospitals in Arizona, Nevada, or Oregon." Docket No. 140 ("Reply") at 4. In either case, this factor does not weigh significantly against Plaintiffs.

With respect to the fourth *BFI* factor, Defendants argue that in this case, no fee was needed to attract competent counsel, because Plaintiffs are large, for-profit entities, most of which are owned by or subsidiaries of Fortune 500 companies. Opp. at 9. This argument fails, however, because Defendants improperly focus on Plaintiffs' financial wherewithal, rather than on the characteristics of the case itself.

Defendants argue that a fee award was not necessary to attract competent counsel because Plaintiffs were large hospitals owned by companies with substantial financial resources. However, the Ninth Circuit has repeatedly held that "a plaintiff's ability to pay fees should not be used as a basis for denying fees." *Herrington*, 883 F.2d at 743; *see also Ackerley Communications v. City of Salem,* 752 F.2d 1394, 1396 (9th Cir.1985) ("The fact that a party has a financial interest

5

in the outcome of litigation . . . is not a valid reason for denying attorney's fees under section 1988."). Indeed, "[w]hether or not the action would have been brought in the absence of section 1988 is irrelevant." *Sable Commc'ns of California Inc. v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 193 (9th Cir. 1989). Ignoring the financial situation of a prevailing plaintiff is consistent with the animating purposes of § 1988, because Congress intended the statute not only "to eliminate financial barriers to the vindication of constitutional rights," but also "to stimulate voluntary compliance with the law." *Seattle School Dist. No. 1 v. Washington,* 633 F.2d 1338, 1348 (9th Cir.1980). As such, "there are public interest considerations that transcend the conferring of a financial benefit on a prevailing party." *Sable*, 890 F.2d at 193. For that reason, Defendants' assertion that the Plaintiff hospitals were merely involved in "financial litigation" does not carry the day. Even though Plaintiffs were acting out of financial self-interest, their victory served the public interest by more clearly delineating the contours of the dormant Commerce Clause and encouraging states to comply with its requirements. Furthermore, this case did not only result in Plaintiff hospitals receiving equal compensation; it also arguably indirectly benefitted affected patients whose access to the hospitals may be enhanced as a result of this suit.

In sum, the *BFI* factors do not favor Defendants, and do not support the denial of a fee award in this case. And as noted above, *BFI* itself specifically held that as a general matter, "[l]itigants who successfully bring suit under the Commerce Clause may recover damages under § 1983 and attorney's fees under § 1988," even if fees may properly be denied in some individual cases. *BFI*, 983 F.2d at 914. Tellingly, as noted above, Defendants have not cited a single case in which a court denied fees to a prevailing plaintiff in a dormant Commerce Clause case on the ground that doing so would be inconsistent with the purposes of the statute. This case is thus not one of the "unusual cases" in which special circumstances justify the denial of a fee award.

The Ninth Circuit has held, apart from the *BFI* factors, that the "special circumstances" exception may apply where there is "'both a strong likelihood of success on the merits and a strong likelihood of a substantial judgment at the outset of the litigation,' such that the purpose behind § 1988 – ensuring that 'litigants with similar claims would not be dissuaded from bringing

6

suit by the lack of availability of a fee award' – is not implicated."[2]  *Mendez*, 540 F.3d at 1126 (quoting *Herrington v. County of Sonoma*, 883 F.2d 739, 743 (9th Cir. 1989)).  This is not such a case, as Plaintiffs raised a difficult constitutional question whose resolution was not clear at the outset.

Having determined that Plaintiffs are not barred from recovering fees under § 1988, the Court turns next to the amount of the award.

B.   <u>The Amount of the Fee Award</u>

Plaintiffs have requested a fee award under 42 U.S.C. § 1988 of $886,781, based on 1,313.75 hours billed at a rate of $675 per hour.  Plaintiffs argue that their lodestar should be fully compensated based on the "excellent results" achieved in the case.  The Supreme Court has explained that "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983).  While Plaintiffs are correct that in cases "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . encompass[ing] all hours reasonably expended on the litigation," *id.* at 435, *Hensley* also stressed that "[i]t remains for the district court to determine what fee is 'reasonable'" *id.* at 433.  Two potential bases for reduction are significant here.

First, a reduction is warranted if "the plaintiff fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded[.]"  *Id.* at 434.  In cases where a plaintiff presents "different claims for relief that are based on different facts and legal theories . . . counsel's work on one claim will be unrelated to his work on another claim," such that "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved," making a fee award for that work inappropriate.  *Id.* at 435.  By contrast, where "the plaintiff's claims for relief . . . involve a common core of facts or [are] based on related legal theories," such that

---

[2] One prominent treatise, however, suggests that this so-called "bright prospects test" has been implicitly rejected by the Supreme Court.  *See* Martin A. Schwartz & John E. Kirklin, 2 *Section 1983 Litigation* § 3.3 (arguing that the Supreme Court's decision in *Blanchard v. Bergeron*, 489 U.S. 87 (1989), "effectively sounded the death knell of the bright prospects test as the basis for denying § 1988 fees to the prevailing plaintiff whose § 1983 damages suit attracted competent counsel on a contingent-fee basis").

"counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis[,] . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* Under Ninth Circuit precedent, "claims are *unrelated* if the successful and unsuccessful claims are "distinctly different" *both* legally *and* factually." *Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003) (emphasis in original). Conversely, "claims are related . . . if they 'involve a common core of facts *or* are based on related legal theories.'" *Dang v. Cross*, 422 F.3d 800, 812–13 (9th Cir. 2005) (quoting *id.*).

Defendants argue that Plaintiffs should not receive fees for work expended on (1) their unsuccessful claim for retroactive monetary relief, (2) their premature appeal of this Court's ruling on retroactive monetary relief, and (3) on their unsuccessful motion for reconsideration, as well as on their opposition to Defendants' successful motion for reconsideration. Plaintiffs, on the other hand, while offering no argument with respect to these specific claims, contend that their "claims are all 'related' because they all arose out of the same 'course of conduct,' which was the APR-DRG and DSH policies that the Department adopted effective July 1, 2013." Reply at 7.

The Court agrees that the claim for retroactive monetary relief should be treated as an "unrelated" issue on which Plaintiffs were unsuccessful, and thus not entitled to fees. Significantly, the legal issues underlying the claim for retroactive relief under California's mandamus statute, Cal. Civ. Proc. Code § 1085 (asserted by Plaintiffs on the ground for retroactive monetary relief), gave rise to issues entirely distinct from the dormant Commerce Clause analysis. The substantial federal law issues concerning the legality of DSH policies were largely unrelated to the question whether Plaintiffs could obtain retroactive monetary relief via writ of mandate under C.C.P. § 1085. Indeed, the question of Plaintiffs' entitlement to retroactive monetary relief under California law was addressed in separate, supplemental briefing and separate hearing *after* the Court had ruled on the dormant Commerce Clause question, and was decided in a separate order. Docket No. 82. In other words, this is not a situation like that contemplated in *Hensley*, where "counsel's time [was] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461

8

1  U.S. at 435.  To the contrary, the hours spent on this particular claim are clearly identifiable in
2  Plaintiffs' billing records.  For those reasons the claim for retroactive relief constitutes an
3  unrelated claim, such that the work unsuccessfully expended litigating it "cannot be deemed to
4  have been expended in pursuit of the ultimate result achieved."  *Id.*; *see also id.* at 438 n.14
5  (rejecting the position that a district court "should not withhold fees for work on unsuccessful
6  claims unless those claims were frivolous" and holding that it is "well within [a court's] discretion
7  to make a limited fee award in light of the 'minor' relief obtained").  The Court will therefore
8  reduce the fee award by 90.8 hours, reflecting the work on this claim and on the unsuccessful
9  appeal from the Court's order.  For the same reason, the Court denies fees for time spent on
10  Plaintiffs' two motions for reconsideration, Docket Nos. 94 & 103, each of which sought to
11  reargue aspects of the Court's rulings with respect to C.C.P § 1085.  The Court will therefore
12  reduce the fee award by a further 11.9 hours, resulting in a total reduction of 102.7 hours. The
13  Court will not, however, exclude time spent *opposing* Defendants' successful motion for
14  reconsideration.  Defendants fail to offer any authority to support their position that time spent
15  opposing such a motion is excludable where Defendants' motion was directly related to the merits
16  of the Court's Commerce Clause ruling.

17  In addition, *Hensley* further instructed that "[t]he district court also should exclude from
18  [the lodestar] fee calculation hours that were not "reasonably expended." S.Rep. No. 94–1011, p. 6
19  (1976). . . . Counsel for the prevailing party should make a good faith effort to exclude from a fee
20  request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private
21  practice ethically is obligated to exclude such hours from his fee submission. In the private sector,
22  'billing judgment' is an important component in fee setting. It is no less important here." *Hensley*,
23  461 U.S. at 434 (citation omitted).

24  Defendants argue that any fee award to Plaintiffs should be subject to a "reasonableness"
25  reduction of this sort, for several reasons.  Defendants argue that Plaintiffs lost or abandoned
26  several claims, for which they should not recover fees; that some billing entries are vague, or not
27  obviously necessary to this case; that Plaintiffs' requested hourly rate is excessive; and that
28  Plaintiffs achieved only limited success beyond changes the Department had already voluntarily

9

1   and unilaterally implemented under State Plan Amendment ("SPA") 15-020.  The Court disagrees
2   with Defendants on many of their specific arguments.  In particular, Plaintiffs' requested hourly
3   rate is not excessive.  Plaintiffs' have presented evidence that $675 is the rate they customarily
4   charge existing clients; as Plaintiffs' note, the "customary fee" is one of the factors that *Hensley*
5   instructed Courts to consider in determining a reasonable fee.  Defendants argue that because
6   Plaintiffs' counsel are solo practitioners who lack the overhead of large law firms, their fees
7   should be reduced accordingly, but they cite no authority for this position.  Defendants also argue
8   that Plaintiffs' should be barred from requesting fees for work performed by a third attorney
9   brought in late in the case, but again, they cite no authority for this claim, nor is it clear why it
10  should be impermissible to hire additional counsel, if necessary.  Defendants claim that the work
11  performed by this attorney was duplicative of that performed by existing counsel, but they do not
12  explain how this is so.

13  Defendants further argue that the issues on which Plaintiffs' prevailed at summary
14  judgment secured only marginal gains above the changes voluntarily adopted by the Department
15  under SPA 15-020.[3]  Opp. at 13-15.  Defendants argue that under the Supreme Court's decision in
16  *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598
17  (2001), Plaintiffs cannot recover fees on the basis of changes made voluntarily by the State in SPA
18  15-020; instead, Defendants contend, Plaintiffs are "prevailing parties" only to the extent that the
19  Court's order granting partial summary judgment secured *additional* relief.

20  Defendants misread *Buckhannon*.  There, the Supreme Court rejected the "catalyst theory,"
21  according to which a "party that has failed to secure a judgment on the merits or a court-ordered
22  consent decree, but has nonetheless achieved the desired result because the lawsuit brought about
23  a voluntary change in the defendant's conduct" is nevertheless a "prevailing party" for the
24  purposes of § 1988.  *Id.* at 600.  The Court explained that in such cases "defendant's voluntary

---

[3] Specifically, Defendants argue that whereas the Court's dormant Commerce Clause ruling "requires the Department to apply the California "rural floor" in determining the wage index applicable to Plaintiffs' rates," SPA 15-020 had already increased many of these rates.  Defendants also contend that although Plaintiffs succeeded on their claim with respect to DSH payments, that claim may be nothing more than a "paper victory," as it is not clear whether any of the Plaintiffs actually qualify for such payments.

10

change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change" to warrant an award of fees. In the instant case, the Court specifically incorporated the provisions of SPA 15-020 into its orders mandating the Department's compliance with the requirements of the dormant Commerce Clause. *See* Docket No. 81. Prior to the Court's order, the Department would have been free to reverse course and repeal SPA 15-020; the Court's Order, however, made it clear that those changes were constitutionally mandated. Therefore, SPA 15-020 has the requisite "judicial imprimatur" under *Buckhannon*, and Plaintiffs are entitled to fees reflecting the full measure of relief secured. Furthermore, it is undisputed that SPA 15-020 was enacted in response to this lawsuit. This suit was the cognizable catalyst for SPA 15-020.

Nonetheless, the Court agrees that some reduction in the fee award is warranted. As Defendants note, Plaintiffs do not appear to have made *any* voluntary reductions in their requested fee to account for "billing judgment," which *Hensley* explained was essential to determining a reasonable fee. The Ninth Circuit has held that a district court may "impose a small reduction, no greater than 10 percent – a 'haircut' – based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). The Court finds that such a 10 percent "haircut" is warranted here.

As noted above, Plaintiffs' claimed lodestar is $886,781, based on 1,313.75 hours billed at a rate of $675 per hour. Subtracting the 102.7 hours spent on the claim for retroactive monetary relief and motions for reconsideration leaves a lodestar of $817,458.75 based on 1,211.05 hours billed at the same rate. The Court will subtract 10 percent from that amount, or $81,745.88, leaving a total fee award of $735,712.87.

C.   Defendants' Motion for Review of Taxation of Costs

Lastly, Defendants move for review of the costs taxed by the Clerk of the Court, totaling 1,727.25. As an initial matter, Plaintiffs have agreed with Defendants that $1,010.00 in filing fees for Ninth Circuit appeals should be stricken. *See* Docket No. 148. The Court accordingly grants the motion as to those fees. The only item remaining in dispute is a $558.80 charge for transcript costs. Title 28 U.S.C. § 1920 provides that "Fees for printed or electronically recorded transcripts

11

necessarily obtained for use in the case" are taxable as costs. As Defendants note, the transcript request forms filed by Plaintiffs indicate that the transcripts were for use in Plaintiffs' *appeals*. Civil Local Rule 54-3(b)(1), however, provides that the "cost of transcripts necessarily obtained for an appeal is allowable." Defendants argue that this rule must be read in conjunction with Fed. R. App. P. 39(e)(2), which provides for the taxation of costs upon the *conclusion* of an appeal. But Defendants do not cite any authority which so interprets the Local Rule, and contrary to Defendants' assertion, it is not inconsistent for a local rule to permit some transcript costs necessary for the preparation of an appeal, while the FRAP only allows costs upon the conclusion of an appeal. As Plaintiffs point out, in a number of cases this Court has found that transcripts were "necessarily obtained for an appeal" – even before the appeal – because it was a "virtual certainty" that an appeal would follow at the conclusion of the litigation. *Asyst Techs. v. Emtrak Inc.*, No. C 98-20451 JF(HRL), 2009 WL 668727, at *1 (N.D. Cal. Mar. 13, 2009). The same is true here. The parties were "virtually certain" to appeal. The transcripts were reasonably necessary, and their cost will be allowed.

The Court thus grants in part and denies in part Defendants' motion for review of taxation of costs. The total costs allowed will be $717.25.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for attorneys' fees, and awards fees in the amount of $735,712.87. The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for review of taxation of costs, and awards costs in the amount of $717.25.

This order disposes of Docket No. 127.

**IT IS SO ORDERED**.

Dated: February 24, 2017

_____
EDWARD M. CHEN
United States District Judge

12