1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6

7     ASANTE, et al.,                              Case No. 14-cv-03226-EMC

8              Plaintiffs,

9          v.                                      **ORDER GRANTING DEFENDANTS'
                                                   MOTION FOR ENTRY OF JUDGMENT**
10    CALIFORNIA DEPARTMENT OF                      Docket No. 181
      HEALTH CARE SERVICES, et al.,
11
               Defendants.
12

13          The parties disagree whether anything remains to be litigated in this case following the

14    Ninth Circuit's reversal of this Court's prior grant of summary judgment in favor of Plaintiffs

15    under the interstate commerce clause. Plaintiffs insist that, following their loss of the commerce

16    clause claim, they may now pursue a theory challenging Defendants' conduct under the Fourteenth

17    Amendment's Equal Protection Clause. Defendants argue that Plaintiffs have waived that theory.

18    For the reasons explained below, the Court agrees. Accordingly, Defendants' motion is

19    **GRANTED**.

20                        I.          **PROCEDURAL HISTORY**

21          Plaintiffs' initial complaint alleged six causes of action, including for violations of the

22    dormant Commerce Clause, equal protection under the federal and state constitutions, Medicaid

23    statutes and regulations, and for declaratory, injunctive, and other equitable relief. *See* Docket No.

24    1-2 at 12. After pressing the Court to bifurcate liability and prospective relief from the question of

25    retrospective damages, Plaintiffs moved for summary judgment only on their Commerce Clause

26    and 42 U.S.C. § 1396a(a)(13)(A) claims.[1] *See* Docket No. 39 at 15-20. They did *not* move for

27    _____

28    [1] This statute requires that a state plan for medical assistance "take into account (in a manner consistent with section 1923 of this title) the situation of hospitals which serve a disproportionate

1  summary judgment on their equal protection claim.  *Id.*  Although as pled in the complaint,

2  violation of Section 1396a(a)(13)(A) also violated equal protection, *see* Compl. ¶ 42 and note 1,

3  *supra*, Plaintiffs' motion for summary judgment relied exclusively on statutory grounds.  *See*

4  Docket No. 39 at 17-20.  Plaintiffs did not advance any argument under the equal protection

5  clause.

6          After Plaintiffs' motion, Defendants cross-moved for summary judgment on all of

7  Plaintiffs' causes of action, including the equal protection claim.  *See* Docket No. 51 at 18-20.

8  Plaintiffs opposed Defendants' motion, arguing in part that the alleged conduct violated the equal

9  protection clause.  *See* Docket No. 52 at 19-20.  However, Plaintiffs' argument on the claim was

10  brief:  it consisted of a single page with a conclusory argument that Defendants' claim of

11  administrative necessity could not satisfy rational basis review for the same reasons it could not

12  survive scrutiny under the commerce clause (*id.*), which subjects discriminatory laws to a

13  "virtually *per se* rule of invalidity."  *Chemical West Mgmt., Inc. v. Hunt*, 504 U.S. 334, 344 n.6

14  (1992) (quotation omitted).

15          In their subsequently filed brief in opposition to Plaintiffs' motion for summary judgment,

16  Defendants argued that Plaintiffs abandoned their equal protection claim because Plaintiffs had not

17  affirmatively moved for summary judgment thereon.  *See* Docket No. 56 at 9.  Plaintiffs did not

18  challenge that assertion in their reply brief.  *See* Docket No. 58.  They left the claim of

19  abandonment of the equal protection claim unanswered.

20          Defendants' reply brief in support of their own cross-motion re-iterated that Plaintiffs had

21  abandoned the equal protection claim by failing to affirmatively move on it, and by noting that

22  Plaintiffs' opposition to Defendants' motion for summary judgment on that claim merely

23  reiterated their argument under the commerce clause without discussing the necessary elements of

24

25  number of low-income patients with special needs."  42 U.S.C. § 1396a(a)(13)(A).  Plaintiffs

26  alleged that the Department violated these requirements by "annually distribut[ing] over two
billion dollars ($2,000,000,000) in supplemental Medi-Cal DSH monies, none of which has even

27  been paid to any out-of-state hospital."  Compl. ¶ 41.  Plaintiffs alleged that "[t]he distribution of
DSH monies to hospitals located only in California also violates the Interstate Commerce Clause

28  (U.S. Const., art. I, § 8, cl. 3) and the Equal Protection Clauses of both the United States
Constitution and the California constitution."  *Id.* ¶ 42.

2

1    an equal protection claim. *See* Docket No. 59 at 12-15.

2    At the October 15, 2015 hearing on the cross-motions, Plaintiffs did not rebut the

3    abandonment assertion or argue in favor of an equal protection claim. *See* Docket No. 89.

4    The Court granted Plaintiffs' motion for partial summary judgment; it found that

5    Defendants had violated the commerce clause. *See* Docket No. 65 at 43. It also partially granted

6    Defendants' motion for summary judgment under § 1396a(a)(13)(A). *Id.* at 44. The judgment

7    was partial insofar as Plaintiffs had only sought judgment on liability, not damages. The Court did

8    note that it "need not reach Plaintiffs' Equal Protection claims." *Id.* at 43. Since Plaintiffs had not

9    moved for judgment on their equal protection claim, the Court was referring to disposition of

10    Defendants' cross-motion for summary judgment on that issue.

11    The Court then ordered the parties to file supplemental briefs regarding whether Plaintiffs

12    were entitled to retroactive monetary relief. Plaintiffs' supplemental brief surprisingly argued that

13    their complaint "contains no federal causes of action and seeks no remedies under federal law,"

14    and that "[i]nstead, it contains only state law causes of action and seeks only remedies provided

15    for under California law." Docket No. 70 at 1. Plaintiffs argued that they were entitled to

16    monetary relief under California Code of Civil Procedure § 1085, and expressly argued that the

17    Court should not decide the question of retroactive relief pursuant to 42 U.S.C. § 1983. *Id.* In its

18    order regarding retroactive damages, the Court observed that "Plaintiffs expressly waived federal

19    claims, stating that the state complaint contains *only state law causes of action and seeks only*

20    *remedies provided for under California law*." Docket No. 82 at 4 (emphasis added); *see also id.*

21    ("Plaintiffs expressly now disavow any federal causes of action . . . ."). The Court ultimately held

22    that § 1085 did not permit recovery of retroactive damages. *Id.* at 10.

23    Plaintiffs then appealed the Court's order regarding retroactive damages. *See* Docket No.

24    83. However, because the appeal was premature (there was not yet a final judgment), the Ninth

25    Circuit granted Plaintiffs' motion for voluntary dismissal of the appeal. *See* Docket No. 99.

26    Based on Plaintiffs' disavowal of any federal cause of action and the Court's holding that

27    § 1085 did not afford Plaintiffs a basis for relief, Defendants sought leave to file a motion for

28    reconsideration of the Court's summary judgment in favor of Plaintiffs on the commerce clause

1    claim, arguing that the order was not supported by any cause of action in light of the Court's

2    holding regarding § 1085 and Plaintiffs' disavowal of a federal cause of action.  *See* Docket No.

3    92.  The Court granted Defendants leave to file for reconsideration.  *See* Docket No. 110.  In

4    response, Plaintiffs sought leave to amend their complaint to state a cause of action under 42

5    U.S.C. § 1983 in order to save their judgment on the commerce clause.  *See* Docket No. 111.  The

6    proposed amended complaint repeated the same six causes of action initially pled in state court,

7    but added a seventh cause of action titled "federal claims" seeking relief under 42 U.S.C. § 1983

8    and 1988 based on violations of the interstate commerce clause, equal protection clause, and

9    federal Medicare laws.  *See* Docket No. 113 ¶ 57.

10          Technically, the amended complaint re-asserts an equal protection claim.  However, in

11   requesting leave to amend, Plaintiffs explained that their proposed amended complaint "merely

12   makes clear what this Court and the defendants were already assuming during the prior summary

13   judgment process, which is that the plaintiffs are asserting a claim for relief under 42 U.S.C.

14   Section 1983 . . . .  [I]t is the defendants that necessitated the amendment to plaintiffs' Complaint

15   by challenging through their motion for reconsideration this Court's December 21, 2015 partial

16   summary judgment Order.  Had the defendants never filed that motion for reconsideration which

17   questioned the correctness of this Court's December 21, 2015, Order, plaintiffs' proposed

18   amendment would have been unnecessary and redundant."  Docket No. 116 at 3-4.  In other

19   words, there was no reason for the Court or Defendants to believe that the amended complaint was

20   intended to preserve an equal protection claim; rather, it was expressly presented by Plaintiffs as

21   necessary only to reassert a *federal* cause of action in support of relief under the commerce clause,

22   a clarification needed after Plaintiffs' disavowed any federal claim.  With that understanding, the

23   Court granted Plaintiffs' motion for leave to file an amended complaint.  Docket No. 121 at 5.

24   Hence, notwithstanding the amended complaint, Plaintiffs have never pursued in earnest an equal

25   protection claim.

26          Further supporting the conclusion that Plaintiffs did not intend to actively litigate the equal

27   protection claim, at the September 22, 2016 hearing concerning their motion for leave to amend

28   the complaint, Plaintiffs "request[ed] that based on the Court's rulings to date [the Court] enter a

4

1    final judgment so the case [can] move forward." Docket No. 142 at 37:10-12; *id.* at 37:18-19

2    ("We would just prefer that a final judgment be entered."). At Plaintiffs' request, on October 12,

3    2016, the Court entered final judgment, incorporating its summary judgment order as well as the

4    subsequent orders granting Plaintiffs leave to amend and partially granting Defendants' motion for

5    reconsideration. *See* Docket No. 126. That final judgment as requested by Plaintiffs contained no

6    adjudication of any equal protection claim.

7    Plaintiffs thereafter moved for attorneys' fees pursuant to 42 U.S.C. § 1988 and Fed. R.

8    Civ. P. 54(d). *See* Docket Nos. 127 and 128. The Court granted the request. *See* Docket No. 159.

9    Meanwhile, Plaintiffs appealed from final judgment with respect to the Court's

10   retroactivity ruling, *see* Docket No. 129, and Defendants appealed with respect to the Court's

11   commerce clause ruling, *see* Docket No. 141, and the award of attorneys' fees and costs.

12   In their opening brief on appeal, Plaintiffs asserted that "the Ninth Circuit has jurisdiction

13   over the Hospitals' appeal pursuant to 28 U.S.C. § 1291 because this appeal is from a final

14   judgment that *disposes of all parties' claims*." Sondheimer Decl., Ex. B (AOB 6) (emphasis

15   added). Defendants took the same position. Sondheimer Decl., Ex. C (AOB 4).

16   There were three appeals before the Ninth Circuit: the Department's appeal of the

17   commerce clause holding, the Department's appeal of the attorneys' fees and costs award, and the

18   Hospitals' appeal of the Court's holding on retroactivity. *See Asante v. Cal. Dep't Health Care*

19   *Servs.*, 886 F.3d 795, 798 (9th Cir. 2018). The only arguments pressed by Plaintiffs on appeal

20   were that Defendants' policies violated the commerce clause and that Section 1085 permits

21   retroactive relief. *See* First Br. on Cross-Appeal, Case No. 16-17080, Docket No. 14 (9th Cir.

22   Apr. 27, 2017). They made no reference to the equal protection clause other than noting in

23   passing that the complaint had asserted a claim. *Id.* at 2. Defendants' cross-brief touched on the

24   same issues, but also argued that the District Court abused its discretion by permitting Plaintiffs to

25   amend their complaint. *See* Second Br. on Cross-Appeal., Docket No. 16, at 50-58 (9th Cir. Jun.

26   29, 2017). In response, Plaintiffs argued leave to amend was proper because it was for the

27   purposes of clarifying that they had always been seeking prospective relief under federal law; but

28   they made no argument that an equal protection claim remained pending or unresolved. *See* Third

5

1   Br. on Cross-Appeal, Docket No. 21 at 34-41 (9th Cir. Jul. 18, 2017).

2   The Ninth Circuit reversed the Court's judgment on the commerce clause. *Asante*, 886

3   F.3d 795. The Court held that it had "jurisdiction pursuant to 28 U.S.C. § 1291." *Id.* at 799. It

4   concluded that Defendants had not violated the commerce clause. *Id.* at 802. In resolving that

5   issue, the Ninth Circuit found it unnecessary to reach the questions presented in the other two

6   appeals, namely, the Hospitals' appeal of the retroactivity holding and the Defendants' appeal of

7   attorneys' fees and costs. *Id.* at 803. It also did not reach the other issues raised in Defendants'

8   appeal, including whether the Court erred by granting Plaintiffs leave to amend, apparently

9   believing that the issue was mooted by resolution of the commerce clause claim.

10   The Ninth Circuit issued its mandate on May 22, 2018, *see* Docket No. 174, reversing

11   without expressly stating that the case was being remanded for further proceedings on any issue.

## II. DISCUSSION

13   The question now before the Court is whether Plaintiffs may now proceed with their equal

14   protection claim or whether they have effectively waived or abandoned it through their litigation

15   conduct in this Court and on appeal before the Ninth Circuit. The parties have also briefed the

16   question whether the Court has jurisdiction to entertain Plaintiffs' new state law assertion that

17   Defendants have violated State Plan Amendment 15-020.

18   A.   Plaintiffs are Foreclosed From Pursuing Their Equal Protection Claim

19   The complicated procedural history recounted above is not entirely free of ambiguity as to

20   whether Plaintiffs ever intended to pursue their equal protection claim.

21   On the one hand, Plaintiffs (i) did not affirmatively move for summary judgment on the

22   equal protection claim; (ii) did not respond to Defendants' assertion that they had abandoned the

23   claim; (iii) at some point, expressly represented that they were not asserting *any* federal claims;

24   (iv) claimed that the purpose of their amended complaint was solely to support their judgment

25   under the commerce clause; (v) requested entry of final judgment without informing the Court that

26   they intended to preserve their equal protection theory as an alternative claim; (vi) did not seek

27   certification under Rule 54(b) to permit an appeal of less than all claims, which would have clearly

28   preserved their equal protection claim; (vii) expressly represented to the Ninth Circuit that the

United States District Court
Northern District of California

1    Court's final judgment "dispose[d] of *all* parties' claims," Sondheimer Decl., Ex. B (AOB 6)

2    (emphasis added); and (viii) in response to Defendants' challenge to the Court's holding under the

3    commerce clause, Plaintiffs never argued to the Ninth Circuit that the Court's judgment should be

4    affirmed on the alternative basis of the equal protection clause.  Furthermore, Plaintiffs never

5    discussed the equal protection theory in their case management statements.  In the earliest

6    statement, they "request[ed] that this Court bifurcate the liability and prospective remedy issues

7    from the issue of the retroactive reimbursement due the plaintiffs, and schedule cross-motions for

8    summary judgment," without referring to the equal protection claim.  Docket No. 37 at 3.  After

9    the summary judgment motions were fully briefed, the parties submitted another case management

10   statement in which Plaintiffs did not indicate that further liability issues remained outstanding.

11   *See* Docket No. 61.  Plaintiffs did not suggest that they intended to preserve or pursue their equal

12   protection claim in any subsequent, pre-appeal case management statement.  *See* Docket Nos. 66,

13   67, 72, 73.

14          On the other hand, Plaintiffs (i) opposed Defendants' motion for summary judgment on the

15   equal protection claim on the merits, albeit in a brief and conclusory fashion; and (ii) retained the

16   equal protection claim in their amended complaint.

17          While not entirely free from ambiguity, the overwhelming weight of the evidence supports

18   the conclusion that Plaintiffs waived their equal protection claim, as inferred from their litigation

19   conduct.  It may be that any one of these factors in isolation would not have been enough to give

20   rise to a waiver, but here, all of them operating together overwhelmingly support that conclusion

21   because Plaintiffs failed to raise equal protection arguments at nearly every juncture despite

22   having the opportunity to do so.  *See U.S. v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015)

23   ("Generally, an appellee waives any argument it fails to raise in its answering brief."); *In re*

24   *Cellular 101, Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008) (a party waives an argument when it could

25   have raised it on an appeal but did not do so); *BankAmerica Pension Plan v. McMath*, 206 F.3d

26   821, 826 (9th Cir. 2000) ("A party abandons an issue when it has a full and fair opportunity to

27   ventilate its views with respect to an issue and instead chooses a position that removes the issue

28   from the case.").

7

United States District Court
Northern District of California

1    There are two particularly strong indicia of abandonment or waiver here:  (1) Plaintiffs'

2    request for a final judgment, and (2) their failure to advance the equal protection argument on

3    appeal.

4    With respect to the first factor, "[i]t is axiomatic that orders granting partial summary

5    judgment, because they do not dispose of all claims, are not final appealable orders under section

6    1291." *Dannenberg v. Software Toolworks, Inc.*, 16 F.3d 1073, 1075 (9th Cir. 1994) (quoting

7    *Cheng v. Commissioner*, 878 F.2d 306, 309 (9th Cir. 1989)).  In this context, "final" must really

8    mean "final."  The Ninth Circuit has dismissed appeals for lack of jurisdiction under § 1291 where

9    the parties acted to evade the finality requirement by, *e.g.*, stipulating to a waiver of the statute of

10   limitations on claims dismissed without prejudice, *see Dannenberg*, 16 F.3d at 1074, stipulating

11   that dismissed claims could be revived if an appeal was successful, *see Dannenberg*, 16 F.3d at

12   1077, *Cheng*, 87 8F.2d at 309-10, or amending their complaints to withdraw un-adjudicated claims

13   to create the impression no claims remained pending, effectively dismissing those claims without

14   prejudice, *see Am. States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 886 (9th Cir. 2003).[2]  The point

15   of finality is to avoid piecemeal appeals.  A final appealable judgment is generally one that

16   resolves all claims against all parties.  In this case, Plaintiffs requested a final judgment

17   (potentially encompassing all claims)—even though the equal protection claim had not been

18   adjudicated.

19   The final judgment rule does not necessarily mean that a Court has no choice but to

20   adjudicate each and every claim or alternative theory advanced by a plaintiff, even if resolution of

21   a single claim can effectively provide the plaintiff with full relief—as happened here.  The rules of

22   procedure are pragmatic, and they recognize that in certain cases judicial economy may be better

23   served by focusing on resolution of a plaintiff's key claims, rather than the entire kitchen-sink of

24   alternative theories.  Hence, Rule 54(b) permits the Court, at its discretion, to enter partial final

25

26   [2]  The Ninth Circuit has once affirmed jurisdiction under § 1291 notwithstanding the plaintiff's
     dismissal of an un-adjudicated claim without prejudice, but that was because the record indicated
27   that, pragmatically speaking, the claim would not be pursued so the judgment was effectively
     final.  *See James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 (9th Cir. 2002) (plaintiff
28   requested and obtained court permission to dismiss a claim because litigating the claim "would not
     be an efficient use of time and resources, given the small amount of artwork actually involved").

8

1    judgment on fewer than all claims in a multi-claim or multi-party action if it "expressly determines

2    that there is no just reason for delay." Fed. R. Civ. P. 54(b).  Rule 54(b) gives the district court the

3    opportunity to consider that question, usually in response to a party's motion to seek such

4    certification.  The court of appeals then would have the opportunity to "scrutinize for an abuse of

5    discretion in light of the interest of sound judicial administration the district court's evaluation of

6    such factors as the interrelationship of the claims [both certified and uncertified] so as to prevent

7    piecemeal appeals in cases which should be reviewed only as single units." *Curtiss-Wright Corp.*

8    *v. General Elec. Co.*, 446 U.S. 1, 10 (1980).

9         Plaintiffs could have but did not request partial final judgment under Rule 54(b), expressly

10   reserving the equal protection claim.  As a result, neither this Court nor the Court of Appeals had

11   the opportunity to assess the pros and cons of Plaintiffs' litigation plan (to seek judgment on the

12   commerce clause theory first, and then be in a position to assert the equal protection clause claim

13   if they lost on appeal).  Plaintiffs never put the issue before the court.  There was no reason for the

14   Court to believe they were seeking anything less than a true final judgment.  This is especially so

15   since Plaintiffs never contested Defendants' assertion that Plaintiffs had abandoned the equal

16   protection claim.

17        To the extent Plaintiffs contend certification under Rule 54(b) was not necessary because

18   this Court's grant of summary judgment on the commerce clause claim gave Plaintiffs as much

19   relief as they could have achieved under the equal protection claim and that there is no need to

20   litigate alternative theories to obtain duplicative relief, the Court need not reach the question

21   whether Plaintiffs' equal protection and commerce clause claims constituted a single claim or

22   separate claims for purposes of Rule 54(b).  *Compare Wood v. GCC Bend, LLC*, 422 F.3d 873,

23   880-81 (9th Cir. 2005) (Rule 54(b) certification was improper where plaintiff alleged termination

24   and demotion on the basis of age and retaliation because "her legal right to relief [on both

25   theories] stems largely from the same set of facts and would give rise to successive appeals that

26   would turn largely on identical and interrelated facts") *with Int'l Longshore and Warehouse Union*

27   *v. ICTSI Oregon, Inc.*, 863 F.3d 1178, 1185-86 (9th Cir. 2017) (LMRA claim and antitrust

28   counterclaim were separate for Rule 54(b) purposes despite substantial factual overlap where they

9

1    presented "discrete legal issues" that were "complicated and not routine") *and U.S. Citizens Ass'n*

2    *v. Sebelius*, 705 F.3d 588, 595-96 (6th Cir. 2013) (alternative theories challenging constitutionality

3    of statute as violating free expression and association, right to liberty, and right to privacy in

4    medical information were separate from commerce clause theory for Rule 54(b) purposes because

5    "[t]he grant of declaratory or injunctive relief on one of these counts would not vindicate the

6    constitutional right asserted in the other counts," which were still pending in the district court).

7    That question is ultimately immaterial to the outcome of this case: if the two claims were similar

8    enough so as to constitute a single claim under Rule 54(b), Plaintiffs could and should have raised

9    the equal protection argument to support the judgment on appeal; if they were distinct and separate

10   claims, Plaintiffs effectively waived the equal protection claim by requesting final judgment

11   (rather than certification under Rule 54(b)). Generally, a judgment "must conclusively terminate

12   the litigation in order to be considered final" and "an order that *may* terminate the proceeding is

13   insufficient," *Cheng*, 878 F.2d at 310.

14   With respect to the second factor, Plaintiffs made no argument to the Ninth Circuit that the

15   Court's judgment in their favor should be affirmed on the alternative basis of the equal protection

16   clause if the Ninth Circuit were to disagree with the commerce clause holding. Indeed, they

17   represented to that Court that the judgment below was final. Plaintiffs failed to raise the equal

18   protection claim even though the appeals court "may affirm a grant of summary judgment on *any*

19   ground supported by the record, even if not relied upon by the district court." *U.S. ex rel. Ali v.*

20   *Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1144 (9th Cir. 2004) (emphasis added).

21   That includes affirmance based on a legal theory that was not reached by the district court. *See*

22   *K.M. ex rel. Bright v. Tustin Unified School Dist.*, 725 F.3d 1088, 1102-03 (9th Cir. 2013)

23   (explaining that "we could review the record to determine whether there are alternate legal or

24   factual grounds on which to affirm summary judgment [but] we are not bound to do so"); *see also*

25   *Nw. Env. Def. Ctr. v. Brown*, 640 F.3d 1063, 1080-81 (9th Cir. 2011) (considering and rejecting

26   alternative legal theory for affirmance even though it was not raised below). Failure to make an

27   argument in an opposition brief on appeal risks waiver. *See Hawai'i Papaya Indus. Assoc. v. Cty.*

28   *of Hawaii*, 666 Fed.Appx. 631, 633 n.2 (9th Cir. 2016) (holding that appellees "waived [an]

10

1 argument by not raising it as an alternative ground for affirmance in their answering brief on

2 appeal"); *U.S. v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) ("Generally, an appellee waives any

3 argument it fails to raise in its answering brief."). Case law on this point is plentiful. *See*, *e.g.*, *In*

4 *re Cellular 101, Inc.*, 539 F.3d 1150, 1155 (9th Cir. 2008) (appealing party who failed to raise

5 legal argument on appeal could not assert that argument in later proceedings); *Parmalat Capital*

6 *Finance Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 270-71 (2d Cir. 2012) (following remand from

7 first round of appeal, district court erred by affirming its earlier conclusion on the basis of a new

8 legal argument that the parties waived by failing to raise in the first round of appeal); *Eason v.*

9 *Thaler*, 73 F.3d 1322, 1329 (5th Cir. 1996) (prisoner who alleged that exposure to natural gas

10 violated Civil Rights Act in first round of appeal was precluded from arguing after remand that

11 such exposure was unconstitutional cruel and unusual punishment because he was "deemed to

12 have abandoned this claim by not raising it in the brief he submitted . . . in his original appeal").

13 *Cf. Keiran v. Home Capital, Inc.*, 858 F.3d 1127, 1133 (8th Cir. 2017) (in first round of appeal,

14 plaintiffs challenged only whether mortgage loan disclosures were deficient, so they could not

15 subsequently raise a challenge to the accuracy of the disclosures).

16        Plaintiffs suggested at the hearing that the Ninth Circuit would not have been able to

17 review the equal protection claim because this Court had not made specific "findings of fact or

18 law" on it, thus implying they did not act unreasonably in failing to raise the issue before the Court

19 of Appeals. However, Plaintiffs have not identified any factual issues that were not already part of

20 the Court's order on the commerce clause on which the equal protection claim could turn. Indeed,

21 Plaintiffs thought that the existing record was sufficient to resolve the question because in

22 opposing Defendants' motion for summary judgment on the equal protection claim, Plaintiffs did

23 not argue that there were open questions of material fact; rather, they simply referred back to their

24 argument concerning Defendants' administrative necessity defense under the commerce clause.

25 *See* Docket No. 52 at 19-20. Plaintiffs deprived the Ninth Circuit of the opportunity to make that

26 determination itself. Plaintiffs could have but did not flag the issue, thus depriving the Ninth

27 Circuit of the opportunity to decide whether it could resolve the issue on appeal based on the

28 record or to remand for further factual development and pleadings. Plaintiffs' failure to do so was

1     not excusable.

2          In light of these and the many other circumstances described above, Plaintiffs have not

3 acted to preserve or pursue their equal protection claim. They had a full and fair opportunity to

4 advance their equal protection claim prior to appeal or act to preserve it under Rule 54(b), but did

5 not do so. *See BankAmerica*, 206 F.3d at 826. And they could have raised the equal protection

6 argument before the Ninth Circuit, but did not do so. *See In re Cellular 101*, 539 F.3d at 1155.

7 Plaintiffs have effectively waived the claim through their litigation conduct. Accordingly,

8 Defendants' motion for entry of judgment is **GRANTED**.

9    B.     <u>Plaintiffs Are Not Entitled to Re-open the Judgment Under Rule 60.</u>

10          In their opposition brief, Plaintiffs argue that Rule 60 permits the Court to "re-open" final

11 judgment.[3] Plaintiffs have not shown that Rule 60 relief is appropriate in these circumstances.

12 Rule 60(a) authorizes the Court to "correct a clerical mistake or a mistake arising from oversight

13 or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ.

14 P. 60(a). No such clerical error or mistake occurred here.

15          Rule 60(b) authorizes the Court to grant "relief" from a final judgment in case of (1)

16 mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud,

17 misrepresentation, or misconduct; (4) the judgment is void; (5) the judgment has been satisfied,

18 released, or discharged; or (6) any other reason that justifies relief. *See* Fed. R. Civ. P. 60(b)(1)-

19 (6). Reasons (1)-(5) clearly do not apply here. Plaintiffs appear to rely instead on the catch-all

20 paragraph (6), noting that relief is permissible when it is "inequitable to permit a judgment to

21 stand." *Ackerman v. United States*, 340 U.S. 193, 202 (1950) (Black, J., dissenting). None of the

22 cases cited by Plaintiffs are analogous to the current situation. *See Hall v. Haws*, 861 F.3d 977,

23 987-88 (9th Cir. 2017) (district court did not abuse discretion under Rule 60(b)(6) in case

24 involving "a petitioner whose habeas petition was dismissed without reaching the merits of his

25 claim, while his co-defendant was granted habeas relief on the same claim based on the same error

26

27

28

---

[3] The Court may entertain this request because the Ninth Circuit mandate has issued and the request is not based on questions that were before the appeals court. *See Standard Oil Co. of Cal. v. U.S.*, 429 U.S. 17 (1976).

12

1   from the same trial"); *Patapoff v. Vollstedt's Inc.*, 267 F.2d 863, 866 (9th Cir. 1959) (relief from

2   judgment appropriate in bankruptcy proceeding where "appellant made a showing that she had a

3   defense which she was misled into waiving through the erroneous action of the attorney" and

4   "[t]he trial court, although stating 'I don't want to foreclose' this party, nevertheless, because of its

5   plain misapprehension of the situation, accomplished just that foreclosure by its order").

6         There was no inadvertent mistake here nor is there manifest injustice. Plaintiffs made an

7   affirmative decision not to move for summary judgment on their equal protection claim. Plaintiffs

8   acted in a conscious effort to procure an appealable order. Thereafter, they had several

9   opportunities to advance an equal protection argument but failed to do so at every juncture. These

10  circumstances do not merit relief from final judgment. *See* Section II.A, *supra*.

11  C.      There is No Federal Question Jurisdiction Over Alleged Non-compliance With State

12        Medical Regulations

13        Federal question jurisdiction requires either a federal cause of action or a state law cause of

14  action which "necessarily depends on resolution of a substantial question of federal law[.]"

15  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988) (citation omitted). Further,

16  the question must be "contested," "substantial," and "indicat[e] a serious federal interest in

17  claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Prods.*

18  *v. Darue Eng'g Mfg.*, 125 S. Ct. 2363, 2367 (2005).

19        Medicaid is a federal-state program wherein the federal government pays for medical

20  services to the poor, elderly, and disabled. *See* 42 U.S.C. § 1396 *et seq.* States may choose to

21  participate by submitting a "State Plan" to the U.S. Department of Health and Human Services for

22  approval. The State Plan describes the policy and methods used to set payment rates for each

23  service. The Centers for Medicare and Medicaid Services ("CMS") administer the Medicaid

24  program including approval of the State Plans and State Plan Amendments. 42 C.F.R. §§ 430.10,

25  430.15(b). Plans and amendments must meet federal requirements. *See* 42 U.S.C. §§ 1396a(b);

26  42 C.F.R. §§ 430.10, 430.12. The CMS reviews State Plan compliance with Medicaid's statutory

27  and regulatory requirements. *Douglas v. Indep. Living Ctr. of S. Cal., Inc.*, 132 S. Ct. 1204, 1208

28  (2012). CMS may withhold federal funds from non-compliant plans. 42 C.F.R. §§ 430.15,

13

430.18, 430.35.

On September 29, 2015, California obtained CMS approval of State Plan Amendment 15-020 ("SPA 15-020"). The Amendment made certain changes to the reimbursement formula, including for out-of-state border hospitals, effective July 1, 2015. In the May 31, 2018 Case Management Statement, Plaintiffs alleged that Defendants have still not implemented SPA 15-020 and have not reprocessed 1,200 of Plaintiffs' Medi-Cal claims relating to service from July 1, 2015 to June 30, 2016. *See* Docket No. 177 at 5. According to Defendants, however, only 50 of those claims identified involve "fee-for-service" payments that were at issue in this litigation (the rest are payments by managed care plans), and they likely involve technical processing errors in light of the fact that Plaintiffs have successfully processed over 895 claims from FY 2013-14. *Id.* at 9-11. Plaintiffs requested that the Court order the Department to follow SPA 15-020 within 90 days.

The Court asked the parties to brief whether this alleged violation involved a federal question. Plaintiffs have not identified any federal cause of action permitting them to raise this challenge. Rather, they cite language in *Reese v. Kizer*, 46 Cal.3d 996 (1988), that state plans must "conform to the governing federal statutes and regulations," *id.* at 998, but they have not alleged non-compliance with a federal statute or regulation. Plaintiffs also cite federal regulations stating that "[d]eterminations as to whether State plans . . . originally meet or continue to meet the requirements for approval are based on relevant Federal statutes and regulations," 42 C.F.R. § 430.15(a)(1), but whether a *plan* meets federal requirements is a different question from whether Defendants' *failure to adhere* to a plan creates a federal cause of action. Plaintiffs cite no other basis for their claim.

As Defendants suggest, at best, the alleged non-compliance might give rise to a contract claim (*i.e.*, Defendants' failure to act in accord with their agreement with the federal government) or a state law cause of action for non-compliance with state regulations, *see Cal. Ass'n for Health Servs. at Home v. Dep't of Health Servs.*, 148 Cal.App.4th 696, 705-06 (2007) (holding that if California's Department of Health Services "violates the terms of the state plan, it has violated state law as embodied in a regulation," and "the violation of the terms of the state plan, a state law,

14

1    itself gives plaintiffs standing" to pursue a claim). The interpretation and enforcement of SPA 15-

2    020 is a question of state law. *See Cal. Med. Ass'n v. Shewry*, No. CV-083363 CASMANX, 2008

3    WL 11338088, at *5 (C.D. Cal. Jun. 23, 2008) (remanding case to state court where claim turns on

4    interpretation of Department's obligation to administer Medi-Cal in accordance with State Plan).

5           In light of the above, Plaintiffs have not shown that a federal cause of action exists to

6    support the alleged non-compliance with SPA 15-020.

7           In any case, even if the Court were to find jurisdiction over the equal protection claim, it

8    would decline to exercise supplemental jurisdiction over the SPA 15-020 dispute, which is outside

9    of the scope of relief requested in Plaintiffs' complaint. To argue otherwise, Plaintiffs cite a catch-

10   all request in their amended complaint for "[a]n Order compelling the Defendants to comply with

11   the legal duties imposed upon them under the federal Medicaid laws and regulations and with all

12   applicable provisions of the United States and California Constitutions, including payment of the

13   proper amount owed plaintiffs both retroactively and prospectively." Docket No. 173 at p. 19.

14   But this request does not seek relief for violation of California state regulations, like SPA 15-020.

15   Moreover, the core facts for this claim will turn on the particular details of each of the 1,200

16   disputed payments, raising minute and technical issues that are far-removed from Plaintiffs'

17   original allegations that Defendants' reimbursement plan, on a policy and systemic level, violated

18   the Commerce Clause. *See* 28 U.S.C. § 1367(c) (the district court may decline to exercise

19   supplemental jurisdiction if it "raises a novel or complex issue of State law," "substantially

20   predominates over the claim or claims over which the district court has original jurisdiction," or

21   the court "has dismissed all claims over which it has original jurisdiction").

22                                **III.    CONCLUSION**

23          For the reasons above, the Court **GRANTS** Defendants' request for entry of final

24   judgment. Plaintiffs have waived their equal protection claim and, as a result, are foreclosed from

25   reviving it following the Ninth Circuit's decision and mandate. Furthermore, Plaintiffs' allegation

26   that Defendants are in violation of SPA 15-020 does not raise a federal question over which this

27   Court has jurisdiction.

28

                                         15

United States District Court
Northern District of California

In light of the Court's holding, all outstanding issues in this case have been resolved.

This order disposes of Docket No. 181. The Court directs the Clerk to enter judgment for Defendants and to close the case.

**IT IS SO ORDERED**.

Dated: August 1, 2018

_____
EDWARD M. CHEN
United States District Judge

16